Norris Lee **SPENCER,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–88–00849–CR.

Court of Appeals of Texas,
Dallas.

April 30, 1990.

John H. Hagler, Dallas, for appellant.

Carolyn Fitz–Gerald Levin, Dallas, for appellee.

Before STEWART, THOMAS and KINKEADE, JJ.

## OPINION

THOMAS, Justice.

A jury convicted Norris Lee Spencer of burglary of a building and assessed punishment, enhanced by two prior felony convic-

tions, at forty years' confinement in the Texas Department of Corrections.[1] In two points of error, Spencer contends that: (1) the evidence is insufficient to support the conviction, and (2) the evidence is insufficient to prove that the structure was a building. We disagree and, accordingly, affirm the trial court's judgment.

## STANDARD OF REVIEW

■ In determining the sufficiency of the evidence, this Court's inquiry is limited to determining whether, evaluating the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Marroquin v. State*, 746 S.W.2d 747, 750 (Tex. Crim.App.1988). In reviewing the evidence, it is irrelevant whether this court believes the evidence, or believes that the defense evidence outweighs the State's evidence. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE CONVICTION

■ In the first point of error, Spencer contends that the evidence is insufficient to support the conviction because a rational trier of fact could not have found that he committed the offense of burglary beyond a reasonable doubt. We disagree. Dallas police officers conducted a stakeout of a warehouse that had been experiencing a high loss of aluminum billets.[2] The aluminum was being removed from a fenced-in area of the building. On the night of this incident, Officer F.R. McDonald and his partner positioned themselves in a nearby warehouse where they could observe the aluminum billets. After dark, the officers noticed three men in a pickup truck, with its lights off, drive into the area. The gate

---

1. Now Texas Department of Criminal Justice, Institutional Division.

2. An aluminum billet is a roll of aluminum weighing approximately 80 to 90 pounds.

leading into the warehouse area was open, although the business was closed to the public. Spencer, identified as the driver of the truck, parked next to the fenced-in portion and all three men got out. Billy Henry got out of the passenger's side and climbed the fence while Spencer and George Leftridge, the other occupant, stayed by the truck. Henry threw the billets into the bed of the truck while Spencer and Leftridge arranged them. After three or four of the billets had been thrown into the truck, the police officers left the warehouse to cover the exits and call for additional units. A squad car stopped the truck as it pulled away from the area. Eight billets were recovered. Paul Vaughn, the terminal manager for the trucking company that operated the burglarized structure, testified that none of the men had permission to remove the billets from the building. The manager identified the billets recovered from the truck as the ones taken from the company's fenced-in area.

Spencer maintained that he did not know that Henry was stealing the aluminum and that he was merely a passenger in the truck. Spencer stated that he did not meet Leftridge until the day of the incident. He began talking to Henry and Leftridge at an auto repair shop and they decided to go get a drink. They left in a truck which Henry was driving, with Spencer sitting in the middle and Leftridge sitting on the passenger's side. They first stopped at Lew Sterrett at about 8:00 p.m. so that Henry could leave his brother some money. When they left Lew Sterrett, Henry made a quick turn into a warehouse area and told them that he had to stop by his place of employment. According to Spencer, Henry pulled the truck next to a loading dock where the aluminum was stored. Henry got out and climbed the fence, Spencer stayed in the truck and Leftridge stood by the passenger door. Spencer heard a loud noise and turned around to see Henry on top of a stack of aluminum throwing the billets into the truck. Spencer testified that he did not get out of the truck and that no one arranged the billets in the back. Henry got back into the truck and they began to drive away. The police stopped the truck and all three were arrested.

Henry and Leftridge also gave differing versions of what occurred on the night of the incident. Henry stated that he did not remember who drove the truck but he knew that neither he nor Leftridge were driving. Henry also testified that it was not his idea to commit the burglary but that he did throw the billets out of the warehouse area into the back of the truck. Leftridge testified that he repaired Spencer's headlights on the day of the incident. When he finished working, Leftridge and Spencer left in a truck. Leftridge thought it was Spencer's truck because he was doing the work for him at the garage. Spencer was driving and they stopped by a club and picked up Henry. Spencer then drove to the warehouse area and stopped next to some aluminum rolls. Henry got out of the truck, climbed over a fence and began dropping aluminum into the back of the truck. Leftridge said that he got out of the truck, walked around to the driver's side and told Spencer he did not like what was going on and said that he wanted to leave. Spencer told Henry to "come on" and they left with Spencer driving, Leftridge sitting in the middle and Henry on the passenger's side. Leftridge testified that he knew they were going to steal something when they went to the warehouse but he did not know what. He also told the jury that Spencer stayed in the truck and did not steal anything.

Sterling Collins, an inmate in the Dallas County jail, testified that he was in the holdover cell with Henry and Leftridge. According to Collins, Henry told him that Spencer did not know anything about the burglary. Henry told Collins that he was driving the truck and Spencer never got out. Collins acknowledged that he and Spencer had become friends during their time together at the Dallas County jail.

Burglary is defined, in relevant part, as follows:

(a) A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; ...

TEX.PENAL CODE ANN. § 30.02(a)(1) (Vernon 1989).[3] The jury was further instructed on the law of parties. Section 7.01(a) of the Penal Code provides that a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX.PENAL CODE ANN. § 7.01(a) (Vernon 1974). Section 7.02(a)(2) provides that a person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, directs, aids, or attempts to aid the other person to commit the offense. TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974).

■ It is true, as Spencer contends, that mere presence at the scene of an offense is not sufficient to support a conviction under section 7.02(a)(2). However, it is a circumstance tending to prove guilt which, considered with other facts in evidence, may suffice to show that the accused was a participant. *Alexander v. State*, 607 S.W.2d 551, 553 (Tex.Crim.App.1980); *Ashabranner v. State*, 557 S.W.2d 774 (Tex. Crim.App.1977). The court may look to events before, during and after the commission of the offense, and reliance may be placed on actions which show an understanding and common design to do a certain act. *Alexander*, 607 S.W.2d at 553. Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. Circumstantial evidence may be sufficient to show that one is a party to the offense. *Wygal v. State*, 555 S.W.2d 465 (Tex.Crim.App. 1977).

The evidence established that Officer McDonald saw Spencer drive the truck to the warehouse area. Henry climbed the fence and began throwing aluminum billets into the truck. Officer McDonald observed Spencer arranging the billets in the bed of the truck. He also testified that the business was closed to the public at the time of the burglary. Eight aluminum billets were recovered from the truck Spencer was driving. Vaughn testified that he did not give any of the men permission or consent to remove the aluminum from the building. Although Spencer did not "enter" the building, the evidence is sufficient to establish that he was criminally responsible as a party to the offense. The arranging of the billets and the driving of the truck certainly constitute aid in the commission of the offense. Viewing the evidence in the light most favorable to the verdict, we hold that it is sufficient to support the conviction. The first point is overruled.

## SUFFICIENCY OF THE EVIDENCE TO PROVE THAT THE STRUCTURE WAS A BUILDING

■ In the second and final point of error, Spencer argues that the evidence is insufficient to prove that the structure was a building. The indictment alleged that Spencer knowingly and intentionally entered a "building." Section 30.01(2) of the Penal Code defines a "building" as follows:

Any enclosed structure intended for use or occupation as a habitation or for some other purpose of trade, manufacture, ornament, or use.

Spencer cites *Day v. State*, 534 S.W.2d 681 (Tex.Crim.App.1976), for authority that the warehouse is not a building. *Day* held that a concrete block structure with three large permanent openings, surrounded by a chain-link fence, was not of an enclosed character, but instead was permanently open or unenclosed. *Day*, 534 S.W.2d at 684.

Officer McDonald described the warehouse as having walls on three sides and a chain-link fence approximately ten to twelve feet high on the fourth side. This fence had a secured gate. A roof covered the entire warehouse. Officer McDonald testified that the billets were piled against

---

**3.** Unless otherwise noted, all sections cited hereafter refer to Tex.Penal Code Ann. (Vernon 1989).

the fence. Vaughn also described the structure as a warehouse. He testified that the warehouse had a double gate which was secured by lock and key. This double gate is the only means of entry other than climbing over the fence. Vaughn described the fence as being approximately eight feet tall with four strands of barbed wire slanted outward across the top.

This warehouse is significantly different from the structure in *Day*. The structure in *Day* had permanent openings sufficiently large to permit trucks to enter and was not designed for the security of its contents inasmuch as it was permanently open. The fence was not regarded as an enclosure. In the present case, the warehouse did not have permanent openings. Three sides consisted of walls and the fourth was a chain-link fence. All four sides were covered by a roof. In addition, the fence had a double gate which was locked for the security of its contents. Finally, the warehouse was used for storage of the aluminum billets and "storage" is a "use" within the scope of section 30.01(2). *Ellett v. State*, 607 S.W.2d 545 (Tex.Crim.App. 1980). We hold that the evidence is sufficient to establish that the warehouse was a building as defined by section 30.01 of the Penal Code. The second point is overruled and the trial court's judgment is affirmed.