

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00565-CR

TOMMY JAMES PARVIN                                            APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

### FROM THE 271ST DISTRICT COURT OF JACK COUNTY
### TRIAL COURT NO. 4528

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found Appellant Tommy James Parvin guilty of one count of burglary of a habitation with intent to commit aggravated assault with a deadly weapon, one count of aggravated assault with a deadly weapon, and one count of deadly conduct by discharging a firearm. *See* Tex. Penal Code Ann. §§ 22.01(a)(2),

----------

[1]*See* Tex. R. App. P. 47.4.

22.02(a)(2), 22.05(b), 30.02(a)(3) (West 2011 & Supp. 2014). After Parvin entered a plea of true to the enhancement paragraph in the indictment, the trial court sentenced him to thirty years' confinement for the burglary conviction and to twenty years' confinement for both the aggravated assault and deadly conduct convictions. The trial court ordered that the sentences run concurrently. In three issues, Parvin contends that there is insufficient evidence to sustain his convictions on all three counts. We will affirm.

## II. FACTUAL BACKGROUND

During a birthday celebration that Jessica Kincaid threw for her boyfriend Robert Cunningham at their house, Justin Murphy borrowed Jessica's car to take a guest home. Murphy then stopped at a gas station and used $10 from Cunningham's wallet, which was in the car, for gas. Murphy returned to the party. He later left the party with his girlfriend Ciarra Bivins after Bivins got into a physical altercation with Jessica's sister Tabitha.

After Murphy left the party, Cunningham discovered that $10 was missing from his wallet and decided to go confront Murphy at his house. Parvin drove Cunningham to Murphy's house; Chris Vega and Scott Henderson, who had also been at Cunningham's birthday party, rode in Parvin's car. Jessica, Tabitha, and another female who was at the party rode in a separate car to Murphy's house.

Cunningham knocked on Murphy's front door, and when Murphy answered, Cunningham said he wanted to talk to him. Murphy stepped out onto the porch, and Cunningham asked why Murphy had stolen money from his

2

wallet. Cunningham swung at Murphy, and the two proceeded to "wrestle" for about ten minutes. Parvin, Vega, and Henderson goaded Cunningham to "fight like a man" and "take care of business" because he had "[gone] over [t]here to do something." At some point, Cunningham's friend drove up and talked Cunningham into leaving with him.

Vega and Parvin remained at Murphy's house. Murphy went into his backyard, and Vega and Parvin followed him. Murphy picked up a metal T post in his backyard and demanded that the men leave his property. Murphy then dropped the post and walked in his house through the back door. Murphy heard a commotion at his front door, so he grabbed a BB gun that looked like an AR-15. Although the testimony at trial differed on what exactly happened next, Vega ultimately kicked in Murphy's front door, and several gunshots were fired at and into Murphy's house.

Murphy testified that after he went inside the back door, Vega began kicking in the front door. Murphy grabbed the BB gun inside but dropped it to hold the front door shut. He looked through the glass window of the door and saw Vega "standing there with a pistol . . . , pointing it at [Murphy]." Murphy moved his head and Vega fired two gunshots into the door. Everything got quiet after that, so Murphy stepped out on the porch and saw everyone walking away from his house. Murphy testified, "[A]nd then that's when I [saw Parvin] had the pistol pointed at me." Parvin was standing in Murphy's yard about fifteen feet from him; Murphy turned to walk back inside and then heard two gunshots. One

3

shot struck the door frame to Murphy's left and the other hit above the door. Murphy testified that he and Parvin did not like each other and had been in a fist fight two weeks prior to the incident at his house. Parvin had dated Murphy's girlfriend, Bivins, prior to Murphy dating her.

Jessica testified that after Murphy entered his house through his back door, he came out on the front porch with "a big black [gun]" about two or three feet long and told everyone to leave his house. Murphy went back inside, but Vega became very upset, yelling, "[T]hat's the third time [Murphy] pulled a gun on me." Vega kicked in the front door, and Murphy managed to hold it up to keep it closed. Vega began to walk off the porch, and then Jessica heard a gunshot go off from the area of Parvin's car. Jessica did not see who fired the gun, but after she heard the gunshot, she saw Parvin hand Vega the gun and saw Vega fire four shots at Murphy's house.

At this point, the group of people left Murphy's property. Murphy's neighbor called 911 and told the operator that he had heard six to eight gunshots. Police arrived shortly thereafter. Officers found bullet holes in Murphy's front door and the front of his house and found bullet fragments inside the house.

### III. STANDARD OF REVIEW

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

4

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9,

5

13 (Tex. Crim. App. 2007). We must review circumstantial evidence of intent with the same scrutiny as other elements of an offense. *Laster v. State*, 275 S.W.3d 512, 519–21 (Tex. Crim. App. 2009) (overruling *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000)); *see Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) ("Circumstantial evidence, by itself, may be enough to support the jury's verdict."). Although motive and opportunity are not elements of a criminal offense, they can be circumstances that are indicative of guilt and therefore may be properly considered in an evidentiary sufficiency review. *Temple*, 390 S.W.3d at 360.

## IV. SUFFICIENCY OF THE EVIDENCE

### A. Burglary of Habitation

In his first issue, Parvin argues that insufficient evidence exists to support his conviction for burglary of a habitation with intent to commit aggravated assault with a deadly weapon. A person commits an offense if, without the owner's effective consent, the person enters a habitation with the intent to commit aggravated assault with a deadly weapon. Tex. Penal Code Ann. § 30.02(a)(3).

Even if a person does not personally commit the offense, a court may find him guilty as a party if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). Under the law of parties, the defendant need not even enter the building. *Powell v. State*, 194

6

S.W.3d 503, 506 (Tex. Crim. App. 2006). In determining whether the accused is guilty as a party, we may consider events occurring before, during, and after commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000). Although mere presence at the scene of the offense is not enough, presence is a circumstance tending to prove guilt, which, when combined with other facts, may suffice to show the accused was a participant. *See Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).

In this case, Parvin argues that he cannot bear responsibility for Vega's actions—even under the law of parties—because he went to Murphy's house only to talk about the missing money and that the confrontation escalated only between Murphy and Vega after Murphy pulled a gun, angering Vega. However, the record evidence reveals that Parvin drove the men to Murphy's house for a confrontation, encouraged Cunningham in his physical altercation with Murphy, and after Cunningham left, stayed and followed Murphy to his backyard. The evidence shows that Parvin was standing by his car when Vega kicked in Murphy's door, but evidence also exists that Parvin pointed a gun at Murphy, fired shots at Murphy's house, and handed the gun to Vega, who fired more shots at Murphy's house.

A rational factfinder could determine from the evidence presented at trial that without consent, Vega entered Murphy's house in order to commit

7

aggravated assault by kicking open his door. *See* Tex. Penal Code Ann. § 30.02(a)(3); *see also Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.— Amarillo 2010, pet. ref'd) (explaining that any breach of the "close" of the residence constitutes entry into the residence). A rational factfinder also could have determined that Parvin was acting to promote or assist in the burglary from the evidence that he drove the group of men to Murphy's house, encouraged Cunningham's fight with Murphy, pointed a gun at Murphy, shot at Murphy's house, and handed the gun to Vega. *See* Tex. Penal Code Ann. § 7.02(a)(2); *King*, 29 S.W.3d at 564; *see also Wilkerson v. State*, 874 S.W.2d 127, 129–30 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (holding that party who did not enter into a burgled gas station demonstrated intent under the law of parties by driving the getaway vehicle); *Spencer v. State*, 789 S.W.2d 397, 398–99 (Tex. App.—Dallas 1990, pet. ref'd) (holding that defendant's arranging of the stolen billets and driving of the truck demonstrated participation in the crime). Although Jessica's and Murphy's testimony about the series of events conflicts in some regards, the jury possessed the authority to weigh conflicting facts. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Resolving any inconsistencies in the light most favorable to the verdict, as we must, we hold that sufficient evidence exists to support Parvin's conviction as a party to the offense of burglary with intent to commit aggravated assault. *See* Tex. Penal Code Ann. § 7.02(b); *Powell*, 194 S.W.3d at 506. We overrule Parvin's first issue.

8

## B. Aggravated Assault With a Deadly Weapon

In his second issue, Parvin argues that there is insufficient evidence to uphold his conviction for aggravated assault with a deadly weapon. A person commits an offense by knowingly threatening another with imminent bodily injury and using or exhibiting a deadly weapon during the commission of the assault. Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2). The act of pointing a loaded gun at an individual is, by itself, threatening conduct that supports a conviction for aggravated assault. *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd). It is not necessary that the defendant make any verbal threats. *Cantu v. State*, 953 S.W.2d 772, 775 (Tex. App.—Corpus Christi 1997, pet. ref'd).

Here, Murphy testified that Parvin pointed the gun at him and that Murphy feared for his life. Parvin contends on appeal that Murphy's testimony lacked credibility, but in our sufficiency review, we may not re-evaluate the weight and credibility of the evidence. *See Isassi*, 330 S.W.3d at 638. We hold that, when viewed in the light most favorable to the verdict, sufficient evidence exists for a reasonable jury to find Parvin guilty of aggravated assault with a deadly weapon beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey*, 393 S.W.3d at 768. We overrule Parvin's second issue.

## C. Deadly Conduct by Discharging a Firearm

In his third issue, Parvin argues that there is insufficient evidence to uphold his conviction for deadly conduct by discharging a firearm. A person commits an

9

offense if he knowingly discharges a firearm at or in the direction of a habitation and is reckless as to whether the habitation is occupied. Tex. Penal Code Ann. § 22.05(b)(2).

Here, Jessica testified that she heard a gunshot and then saw Parvin give the gun to Vega. Murphy testified that he saw Parvin pointing a gun at him, turned around, and then heard gunshots. Murphy testified that one bullet hit the top of his house and the other hit his house next to his door, about three or four feet from the ground. Although neither Murphy nor Jessica saw Parvin discharge the gun, a rational juror could have reasonably inferred that Parvin fired the gun at Murphy's house based on Murphy's and Jessica's testimony that they saw him holding a gun just before or just after hearing the gunshots. *See Sorrells*, 343 S.W.3d at 155. Viewing the evidence in the light most favorable to the verdict, we hold that sufficient evidence exists to support the jury's finding that Parvin committed the offense of deadly conduct by discharging a firearm. *See* Tex. Penal Code Ann. § 22.05(b)(2). We overrule Parvin's third issue.

## V. CONCLUSION

Having overruled Parvin's three issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

10

DELIVERED:  December 4, 2014