PD-0043-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/7/2015 8:15:22 PM
Accepted 1/16/2015 2:17:34 PM
ABEL ACOSTA
CLERK

# PD-0043-15

Cause No. _____

## TO THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

-----------------------------------------------------------------

**TOMMY JAMES PARVIN**
*Petitioner*

**VS.**

**THE STATE OF TEXAS**
*Respondent.*

-----------------------------------------------------------------

**Petition in Cause No. 4528 from the 271st Judicial District Court of Jack County, Texas and Cause No. 02-13-00565-CR from the Court of Appeals for the Second Supreme Judicial District of Texas.**

-----------------------------------------------------------------

## PETITION FOR DISCRETIONARY REVIEW

-----------------------------------------------------------------

**Paul Belew**
**S.B.N.: 00794926**
**P.O. Box 1026**
**Decatur, Texas 76234**
**(940) 627-6400**
**(940) 627-6408  (facsimile)**
**ATTORNEY FOR PETITIONER,**
**TOMMY PARVIN**

## PETITIONER REQUESTS ORAL ARGUMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS          I

INDEX OF AUTHORITIES          ii

STATEMENT REGARDING ORAL ARGUMENT          2

STATEMENT OF THE CASE          2

STATEMENT OF THE PROCEDURAL HISTORY          2

GROUNDS FOR REVIEW          3

ARGUMENT AND AUTHORITIES          3

PRAYER FOR RELIEF          8

CERTIFICATE OF SERVICE          9

# INDEX OF AUTHORITIES

**Cases:**

*Parvin v. State*,
     No. 02-13-00565-CR (December 4, 2014) (Memorandum Opinion)          5, 6, 7

**Statutes:**

TEX. PENAL CODE ANN., § 22.01(a) (West 2013)          7

TEX. PENAL CODE ANN., § 22.02(a) (West 2013)          7

TEX. PENAL CODE ANN., § 22.05(b) (West 2013)          7

TEX. PENAL CODE ANN. § 30.02(a)(3)          5

NO. _____

IN THE

COURT OF CRIMINAL

APPEALS

OF TEXAS

--------------------------------------------------------------

TOMMY JAMES PARVIN
*Petitioner*

VS.

THE STATE OF TEXAS

--------------------------------------------------------------

Petition in Cause No. 4528 from the 271st Judicial District Court of Jack County, Texas and Cause No. 02-13-00565-CR from the Court of Appeals for the Second Supreme Judicial District of Texas.

=================================================================
**PETITION FOR DISCRETIONARY REVIEW**
=================================================================

**TO THE HONORABLE COURT OF CRIMINAL APPEALS**

**COMES NOW** Tommy Parvin(Hereinafter, "Petitioner") by and through his attorney of record and files this, his Petition for Discretionary Review and herein respectfully requests this Court to grant discretionary review of the above named cause for the reasons set forth herein:

-1-

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument to the extent it would be helpful to the Court.

## STATEMENT OF THE CASE

On December 12, 2012 Defendant  Tommy Parvin was indicted in Cause Number 4528 alleging that on or about September 14, 2012 he committed Burglary of a Habitation with Intent to Commit Other Felony, Aggravated Assault with a Deadly Weapon and Deadly Conduct - Discharge of a Firearm.  RR 2:29:3-30:8.

The case proceeded to trial on October 22, 2013, 2012.  R.R. 1:1.   On October 23, 2012 the jury returned a verdict in which it found  Tommy Parvin guilty on all counts.  R.R. 3:29:12-23.   A judgment was entered sentencing Defendant to confinement in the Institutional Division of the Texas Department of Criminal Justice for thirty years on the burglary count and twenty years on both the aggravated assault and deadly conduct charges.

The case was then appealed to the Second Court of Appeals.  The Court of Appeals ruled against Petitioner's No Evidence / Insufficient Evidence challenge in an unpublished opinion. *See Appendix*.

This Petition for Discretionary Review ensued.

## STATEMENT OF THE PROCEDURAL HISTORY

Mr. Parvin was indicted on December 7, 2012 by a Jack County Grand Jury of the 271st Judicial District Court on charges of Burglary of a Habitation with Intent to Commit Other Felony, Aggravated Assault with a Deadly Weapon and Deadly Conduct - Discharge

of a Firearm. RR 2:29:3-30:8. On October 22, 2013 the case was tried before a jury in the 271st Judicial District Court for Jack County, Texas, Judge John Fostel presiding. *See, e.g.,* R.R. 1:1.

On October 23, 2012 the jury returned a verdict in which it found Tommy Parvin guilty on all counts. R.R. 3:29:12-23. A judgment was entered sentencing Defendant to confinement in the Institutional Division of the Texas Department of Criminal Justice for thirty years on the burglary count and twenty years on both the aggravated assault and deadly conduct charges. Defendant thereafter filed an Affidavit of Indigency and his Notice of Appeal.

The Court of Appeals for the Second Supreme Judicial District of Texas issued a Memorandum Opinion on December 4, 2014. No Motion for Rehearing was filed. The instant Petition for Discretionary Review followed within thirty days.

## GROUNDS FOR REVIEW

1.  There Was No Evidence to Support a Conviction for Burglary of a Habitation.

2.  There Was No Evidence to Support the Convictions for Aggravated Assault with a Deadly Weapon nor for Deadly Conduct, Discharge of a Firearm.

## ARGUMENT AND AUTHORITIES

**I.    The Background:**

On or about September 14, 2012 Robert Cunningham and his girlfriend, Jessica Kincaid, were celebrating Robert's birthday at their residence. R.R. 2:108:12-16. Justin

Murphy (one of the two victims) arrived about 7:00 p.m. R.R. 2:137:19-21, *but, see*, 108:17-19. Mr. Murphy borrowed Jessica Kincaid's car to take Jackee Bailey home; while out he stopped at Allsup's. R.R. 2:110:18-23; 111:12-25; 112:6-14. At Allsup's Mr. Murphy bought a pack of cigarettes and put gas in Jessica's car using $10.00 from Robert Cunningham's wallet that had been left in the car. R.R. 2:111:12-25; 112:6-14.

After Mr. Murphy left the party, Robert Cunningham discovered that the ten dollars ($10.00) was missing from his wallet. 2:195:21-196:11. Upon discovering the money missing, Mr. Cunningham stated that he was going to Mr. Murphy's house to see what had happened to the money. R.R. 2:196:9-11.

Mr. Cunningham left in Mr. Parvin's vehicle with Chris Vega and Scott Henderson. R.R. 2:196:17-19; 197:21-22. Jessica Kincaid followed in her car with Tabitha Kincaid and Jackee Bailey. R.R. 2:197:16-17.

Upon arriving at Mr. Murphy's home, Mr. Cunningham and Mr. Murphy "wrestled" for about ten (10) minutes after which Mr. Cunningham left. R.R. 2:199:15-200:19; 200-22-201:4. Mr. Vega then followed or pursued Mr. Murphy into the backyard, where Mr. Murphy grabbed a metal T Post and was threatening Mr. Vega demanding that he leave. R.R. 2:201:12-24. Mr. Murphy then dropped the post and walked in his back door and Mr. Vega walked to the front of the house. R.R. 2:121:6-11; 122:4-13; 201:17-202:5; 203:6-14.

Jessica Kincaid testified that Mr. Murphy walked out of his house carrying what appeared to be an AR-15 threatening to shoot Mr. Vega, and that Mr. Vega then became

extremely upset complaining that this was the second time Mr. Murphy had pulled a gun on him. 2:203:10-204:18-23; 219:15-25; 205:3-6. He then kicked down the door, a single shot was fired, Mr. Vega ran from the porch, got a gun from Mr. Parvin and fired four shots at the house. R.R. 2:205:7-9; 206:7-8; 218:2-10; 207:11-121; 208:8-20.

## II.      There Was No Evidence to Support a Conviction for Burglary of a Habitation.

Burglary occurs when without the owner's effective consent, the person enters a habitation with the intent to commit aggravated assault with a deadly weapon. *Parvin v. State*, No. 02-13-00565-CR (December 4, 2014) (Memorandum Opinion) at 6 [Hereinafter, "*Parvin v. State*") *citing* TEX. PENAL CODE ANN. § 30.02(a)(3). It seems undisputed Mr. Parvin never entered the house. *See, e.g.,* R.R. 2:221:7-23; 2:224:16-18; 225:2-7; 226:1-23. The Court of Appeals, however, correctly observed that Mr. Parvin could nevertheless be found guilty under the law of parties. *Parvin v. State*, 6. In order to be guilty under the law of parties, however, two things must be established: (1) an intent to promote or assist the commission of the offense; and (2) the person must act by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense. *Id.* The Court of Appeals concluded that:

> A rational factfinder also could have determined that Parvin was acting to promote or assist in the burglary from the evidence that he drove the group of men to Murphy's house, encouraged Cunningham's fight with Murphy, pointed a gun at Murphy, shot at Murphy's house, and handed the gun to Vega.

*Parvin v. State*, 8. The evidence adduced at trial, however, indicated Mr. Parvin drove the group to Mr. Murphy's house on an unrelated matter. *See, e.g.,* R.R. 2:151:10-14. Similarly,

the wrestling confrontation was unrelated to the burglary or the events leading to Mr. Vega's entry into the house. *Id.; see, also,* R.R. 2:215:4-11. It was only after Mr. Murphy displayed a realistic looking BB gun that Mr. Vega became intent upon breaking down the door and getting to Mr. Murphy. R.R. 2:203:13-16; 204:1-23; 2:205:4-6; 2:206:3-8; 2:220:2-12. In fact this was a personal matter between Mr. Vega and Mr. Murphy arising from the fact that Mr. Murphy had previously pulled a gun on Mr. Vega. R.R. 2:205:4-6. Indeed, prior to that time, the uncontradicted testimony is that Mr. Vega had no intention of entering Mr. Murphy's residence. R.R. 2:203:7-14. It was a distinct and separate confrontation wholly unrelated to any one or any purpose of anyone other than Mr. Murphy and Mr. Vega. There was no evidence of intent.

The Court also noted that Mr. Parvin pointed and fired a gun at Mr. Murphy and his house. *Parvin v. State*, 8. Even assuming Mr. Parvin did point or fire a gun, those acts were alleged to have occurred as the group was leaving and after any burglary was completed. It could not serve to solicit, encourage, direct, aid, or act as an attempt to aid Mr. Vega to commit the now completed burglary.

III.    **There Was No Evidence to Support the Convictions for Aggravated Assault with a Deadly Weapon nor for Deadly Conduct, Discharge of a Firearm.**

It is undisputed that no one saw Mr. Parvin fire any shots. *Parvin v. State*, 10. To the contrary, Mr. Parvin appears to have remained by his vehicle during the entire episode and no one observed any aggressive behavior on his part other than Mr. Murphy's allegation that Mr. Parvin pointed a gun at him.

Both Aggravated Assault and Deadly Conduct require an intent -- in the former an intent (intentionally or knowingly) to threaten another with imminent bodily injury and in the latter, an intent (knowingly) to discharges a firearm at or in the direction of an individual, habitation, building or vehicle. *See*, TEX. PENAL CODE ANN., §§ 22.02(a), 22.01(a), 22.05(b) (West 2013). The two factors relied upon by the Court of Appeals in sustaining the weapons convictions were the testimony of Jessica that Mr. Parvin handed a gun to Vega and Mr. Murphy's testimony that Mr. Parvin pointed a gun at him. *Parvin v. State*, 9-10.

Ms. Kincaid testified that she did not have a clue where the gun came from, did not know whose gun it was, and perhaps most significantly, did not know if Mr. Parvin gave the gun to Mr. Vega, or if Mr. Vega just grabbed it. R.R. 2:225:8-10; 2:225:11-12; 2:225:23-226:10. She did not report any aggressive actions by Mr. Parvin. Mr. Murphy was upset, scared, terrified and his adrenalin was pumping. R.R. 2:59:18-20; 2:131:4-8. His testimony that Mr. Parvin was holding a gun that was pointed in his direction is the only aggressive act by Mr. Parvin observed by him.

Neither act, however, absent a criminal intent constitutes criminal conduct. The absence of any motive on the part of Mr. Parvin coupled with the absence of any aggressive behavior means that intent could only be inferred from the acts themselves. This circular approach, however, virtually eliminates any practical requirement of intent as an element of the crimes.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Tommy Parvin respectfully requests that the Court of Criminal Appeals grant Appellant's Petition for Discretionary Review and for such other and further relief to which he may show himself to be entitled.

Respectfully submitted,

/s/  Paul Belew
Paul Belew
S.B.N.: 00794926

BELEW & SINGLETON
P.O. Box 1026
Decatur, Texas 76234
(940) 627-6400
(940) 627-6408  (facsimile)

FOR APPELLANT
TOMMY PARVIN

## CERTIFICATE OF SERVICE

This is to certify that on this, the 5th day of January, 2015 a true and correct copy of the above and foregoing document has been forwarded by means of electronic filing as follows:

Greg Lowery
Wise County District Attorney's Office
Wise County Courthouse
Second floor
Decatur, Texas 76234


 /s/  Paul Belew
Paul Belew



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00565-CR

TOMMY JAMES PARVIN                            APPELLANT

V.

THE STATE OF TEXAS                                  STATE

----------

### FROM THE 271ST DISTRICT COURT OF JACK COUNTY
### TRIAL COURT NO. 4528

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury found Appellant Tommy James Parvin guilty of one count of burglary of a habitation with intent to commit aggravated assault with a deadly weapon, one count of aggravated assault with a deadly weapon, and one count of deadly conduct by discharging a firearm. *See* Tex. Penal Code Ann. §§ 22.01(a)(2),

----------

[1]*See* Tex. R. App. P. 47.4.

22.02(a)(2), 22.05(b), 30.02(a)(3) (West 2011 & Supp. 2014). After Parvin entered a plea of true to the enhancement paragraph in the indictment, the trial court sentenced him to thirty years' confinement for the burglary conviction and to twenty years' confinement for both the aggravated assault and deadly conduct convictions. The trial court ordered that the sentences run concurrently. In three issues, Parvin contends that there is insufficient evidence to sustain his convictions on all three counts. We will affirm.

## II. FACTUAL BACKGROUND

During a birthday celebration that Jessica Kincaid threw for her boyfriend Robert Cunningham at their house, Justin Murphy borrowed Jessica's car to take a guest home. Murphy then stopped at a gas station and used $10 from Cunningham's wallet, which was in the car, for gas. Murphy returned to the party. He later left the party with his girlfriend Ciarra Bivins after Bivins got into a physical altercation with Jessica's sister Tabitha.

After Murphy left the party, Cunningham discovered that $10 was missing from his wallet and decided to go confront Murphy at his house. Parvin drove Cunningham to Murphy's house; Chris Vega and Scott Henderson, who had also been at Cunningham's birthday party, rode in Parvin's car. Jessica, Tabitha, and another female who was at the party rode in a separate car to Murphy's house.

Cunningham knocked on Murphy's front door, and when Murphy answered, Cunningham said he wanted to talk to him. Murphy stepped out onto the porch, and Cunningham asked why Murphy had stolen money from his

2

wallet. Cunningham swung at Murphy, and the two proceeded to "wrestle" for about ten minutes. Parvin, Vega, and Henderson goaded Cunningham to "fight like a man" and "take care of business" because he had "[gone] over [t]here to do something." At some point, Cunningham's friend drove up and talked Cunningham into leaving with him.

Vega and Parvin remained at Murphy's house. Murphy went into his backyard, and Vega and Parvin followed him. Murphy picked up a metal T post in his backyard and demanded that the men leave his property. Murphy then dropped the post and walked in his house through the back door. Murphy heard a commotion at his front door, so he grabbed a BB gun that looked like an AR-15. Although the testimony at trial differed on what exactly happened next, Vega ultimately kicked in Murphy's front door, and several gunshots were fired at and into Murphy's house.

Murphy testified that after he went inside the back door, Vega began kicking in the front door. Murphy grabbed the BB gun inside but dropped it to hold the front door shut. He looked through the glass window of the door and saw Vega "standing there with a pistol . . . , pointing it at [Murphy]." Murphy moved his head and Vega fired two gunshots into the door. Everything got quiet after that, so Murphy stepped out on the porch and saw everyone walking away from his house. Murphy testified, "[A]nd then that's when I [saw Parvin] had the pistol pointed at me." Parvin was standing in Murphy's yard about fifteen feet from him; Murphy turned to walk back inside and then heard two gunshots. One

3

shot struck the door frame to Murphy's left and the other hit above the door. Murphy testified that he and Parvin did not like each other and had been in a fist fight two weeks prior to the incident at his house. Parvin had dated Murphy's girlfriend, Bivins, prior to Murphy dating her.

Jessica testified that after Murphy entered his house through his back door, he came out on the front porch with "a big black [gun]" about two or three feet long and told everyone to leave his house. Murphy went back inside, but Vega became very upset, yelling, "[T]hat's the third time [Murphy] pulled a gun on me." Vega kicked in the front door, and Murphy managed to hold it up to keep it closed. Vega began to walk off the porch, and then Jessica heard a gunshot go off from the area of Parvin's car. Jessica did not see who fired the gun, but after she heard the gunshot, she saw Parvin hand Vega the gun and saw Vega fire four shots at Murphy's house.

At this point, the group of people left Murphy's property. Murphy's neighbor called 911 and told the operator that he had heard six to eight gunshots. Police arrived shortly thereafter. Officers found bullet holes in Murphy's front door and the front of his house and found bullet fragments inside the house.

### III. STANDARD OF REVIEW

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

4

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9,

13 (Tex. Crim. App. 2007). We must review circumstantial evidence of intent with the same scrutiny as other elements of an offense. *Laster v. State*, 275 S.W.3d 512, 519–21 (Tex. Crim. App. 2009) (overruling *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000)); *see Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) ("Circumstantial evidence, by itself, may be enough to support the jury's verdict."). Although motive and opportunity are not elements of a criminal offense, they can be circumstances that are indicative of guilt and therefore may be properly considered in an evidentiary sufficiency review. *Temple*, 390 S.W.3d at 360.

## IV. SUFFICIENCY OF THE EVIDENCE

### A. Burglary of Habitation

In his first issue, Parvin argues that insufficient evidence exists to support his conviction for burglary of a habitation with intent to commit aggravated assault with a deadly weapon. A person commits an offense if, without the owner's effective consent, the person enters a habitation with the intent to commit aggravated assault with a deadly weapon. Tex. Penal Code Ann. § 30.02(a)(3).

Even if a person does not personally commit the offense, a court may find him guilty as a party if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). Under the law of parties, the defendant need not even enter the building. *Powell v. State*, 194

6

S.W.3d 503, 506 (Tex. Crim. App. 2006). In determining whether the accused is guilty as a party, we may consider events occurring before, during, and after commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000). Although mere presence at the scene of the offense is not enough, presence is a circumstance tending to prove guilt, which, when combined with other facts, may suffice to show the accused was a participant. *See Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).

In this case, Parvin argues that he cannot bear responsibility for Vega's actions—even under the law of parties—because he went to Murphy's house only to talk about the missing money and that the confrontation escalated only between Murphy and Vega after Murphy pulled a gun, angering Vega. However, the record evidence reveals that Parvin drove the men to Murphy's house for a confrontation, encouraged Cunningham in his physical altercation with Murphy, and after Cunningham left, stayed and followed Murphy to his backyard. The evidence shows that Parvin was standing by his car when Vega kicked in Murphy's door, but evidence also exists that Parvin pointed a gun at Murphy, fired shots at Murphy's house, and handed the gun to Vega, who fired more shots at Murphy's house.

A rational factfinder could determine from the evidence presented at trial that without consent, Vega entered Murphy's house in order to commit

7

aggravated assault by kicking open his door. *See* Tex. Penal Code Ann. § 30.02(a)(3); *see also Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.— Amarillo 2010, pet. ref'd) (explaining that any breach of the "close" of the residence constitutes entry into the residence). A rational factfinder also could have determined that Parvin was acting to promote or assist in the burglary from the evidence that he drove the group of men to Murphy's house, encouraged Cunningham's fight with Murphy, pointed a gun at Murphy, shot at Murphy's house, and handed the gun to Vega. *See* Tex. Penal Code Ann. § 7.02(a)(2); *King*, 29 S.W.3d at 564; *see also Wilkerson v. State*, 874 S.W.2d 127, 129–30 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (holding that party who did not enter into a burgled gas station demonstrated intent under the law of parties by driving the getaway vehicle); *Spencer v. State*, 789 S.W.2d 397, 398–99 (Tex. App.—Dallas 1990, pet. ref'd) (holding that defendant's arranging of the stolen billets and driving of the truck demonstrated participation in the crime). Although Jessica's and Murphy's testimony about the series of events conflicts in some regards, the jury possessed the authority to weigh conflicting facts. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Resolving any inconsistencies in the light most favorable to the verdict, as we must, we hold that sufficient evidence exists to support Parvin's conviction as a party to the offense of burglary with intent to commit aggravated assault. *See* Tex. Penal Code Ann. § 7.02(b); *Powell*, 194 S.W.3d at 506. We overrule Parvin's first issue.

8

## B. Aggravated Assault With a Deadly Weapon

In his second issue, Parvin argues that there is insufficient evidence to uphold his conviction for aggravated assault with a deadly weapon. A person commits an offense by knowingly threatening another with imminent bodily injury and using or exhibiting a deadly weapon during the commission of the assault. Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2). The act of pointing a loaded gun at an individual is, by itself, threatening conduct that supports a conviction for aggravated assault. *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd). It is not necessary that the defendant make any verbal threats. *Cantu v. State*, 953 S.W.2d 772, 775 (Tex. App.—Corpus Christi 1997, pet. ref'd).

Here, Murphy testified that Parvin pointed the gun at him and that Murphy feared for his life. Parvin contends on appeal that Murphy's testimony lacked credibility, but in our sufficiency review, we may not re-evaluate the weight and credibility of the evidence. *See Isassi*, 330 S.W.3d at 638. We hold that, when viewed in the light most favorable to the verdict, sufficient evidence exists for a reasonable jury to find Parvin guilty of aggravated assault with a deadly weapon beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey*, 393 S.W.3d at 768. We overrule Parvin's second issue.

## C. Deadly Conduct by Discharging a Firearm

In his third issue, Parvin argues that there is insufficient evidence to uphold his conviction for deadly conduct by discharging a firearm. A person commits an

9

offense if he knowingly discharges a firearm at or in the direction of a habitation and is reckless as to whether the habitation is occupied. Tex. Penal Code Ann. § 22.05(b)(2).

Here, Jessica testified that she heard a gunshot and then saw Parvin give the gun to Vega. Murphy testified that he saw Parvin pointing a gun at him, turned around, and then heard gunshots. Murphy testified that one bullet hit the top of his house and the other hit his house next to his door, about three or four feet from the ground. Although neither Murphy nor Jessica saw Parvin discharge the gun, a rational juror could have reasonably inferred that Parvin fired the gun at Murphy's house based on Murphy's and Jessica's testimony that they saw him holding a gun just before or just after hearing the gunshots. *See Sorrells*, 343 S.W.3d at 155. Viewing the evidence in the light most favorable to the verdict, we hold that sufficient evidence exists to support the jury's finding that Parvin committed the offense of deadly conduct by discharging a firearm. *See* Tex. Penal Code Ann. § 22.05(b)(2). We overrule Parvin's third issue.

## V. CONCLUSION

Having overruled Parvin's three issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

10

DELIVERED:  December 4, 2014