Oscar CANTU, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 13–93–661–CR, 13–93–662–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 7, 1997.

Rehearing Overruled Oct. 2, 1997.

Juan L. Villescas, Law Office of Juan L. Villescas, Pharr, Joseph A. Connors, III, McAllen, for Appellant.

Rene Guerra District & County Attorney, Theodore C. Hake, Asst. Criminal District Attorney, Edinburg, Robert Huttash, State Prosecuting Attorney, Matthew W. Paul, State Attorney, Austin, for Appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

By two separate indictments appellant Oscar Cantu was charged with the offense of murder in cause number CR–1922–92–D, and with two counts of aggravated assault of a police officer in cause number CR–1915–92–D. All charges against appellant were consolidated into a single trial. After a jury found appellant guilty of murder in the first cause, and of both counts of aggravated assault in the second, it sentenced him to seventy-five and twenty-five years imprisonment, respectively. The sentences are to be served concurrently. By this consolidated appeal, appellant challenges the sufficiency of the evidence for each conviction. We affirm.

### PROCEDURAL HISTORY

Appellant initially appealed his convictions by five points of error, alleging in his first two points that he received ineffective assistance of counsel and that the trial court erred in not granting his motion for new trial on that basis. By his third, fourth, and fifth points, appellant alleged that the evidence was insufficient to convict him on any of the charges.

By our initial opinion, issued December 22, 1994, we reversed appellant's convictions, holding that he was denied the effective assistance of counsel per se because it was

shown that, prior to the commencement trial, his attorney had been suspended from the practice of law for a substantial, rather than technical, reason. *See Cantu v. State*, 897 S.W.2d 389 (Tex.App.—Corpus Christi 1994). The Court of Criminal Appeals reversed our decision, however, and remanded the cases to this Court for further consideration of the representation offered at trial on appellant's behalf. *See Cantu v. State*, 930 S.W.2d 594 (Tex.Crim.App.1996).

When the cases were resubmitted to this Court, appellant withdrew points of error one and two because he did not believe an adequate record existed on which to prevail on those points.[1] Therefore, we will only address points three through five, pertaining to the sufficiency of the evidence offered at trial on each count.

### SUFFICIENCY OF THE EVIDENCE

By his third point of error, appellant contends that the evidence failed to prove beyond a reasonable doubt that appellant, either as a principal or as a party, intentionally caused the death of Rodolfo Soto. Because appellant prays for an acquittal rather than a new trial, we will treat his point as a challenge to the legal sufficiency of the evidence.

In reviewing the sufficiency of the evidence adduced at trial, we examine all of the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126, 132–33 (Tex.Crim.App.1996). This standard applies to both direct and circumstantial evidence cases. *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied*, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).

In order to be convicted of murder, the State must prove beyond a reasonable doubt that an accused intentionally or knowingly caused the death of another person. TEX.PENAL CODE ANN. § 19.02 (Vernon 1994). An accused may be convicted as a party to an offense, and thereby be held criminally responsible for an offense committed by another person if, acting with the intent to promote or assist the commission of the offense, the accused solicited, encouraged, directed, aided, or attempted to aid the other person in the commission of the offense. TEX.PENAL CODE ANN. § 7.02(a) (Vernon 1994). Appellant was indicted for intentionally or knowingly causing the death of Rodolfo Soto by shooting him with a firearm. The jury charge incorporated the indictment, and also allowed for appellant's conviction as a party to the offense, as well as for the lesser included offenses of attempted murder and aggravated assault.

The following facts were undisputed at trial: On the night of May 16, 1992, appellant went out drinking with his girlfriend Sarah Quintanilla and his friend Ruben Ramirez. They went to the Roman Inn, a McAllen, Texas bar. Inside the bar, another one of appellant's girlfriends, San Juana "Yolanda" Castillo arrived, and almost began a fight with Quintanilla. The group managed to avoid an altercation, and they recommenced drinking and playing pool. At some point, Soto approached their table and asked to sit with the women. They told him the seat was taken, and Soto then approached Ramirez, and said something to him. A fight between Ramirez and Soto ensued, and appellant joined Ramirez in the fray. Appellant took his pistol out at that time.

Eyewitnesses gave differing accounts of what transpired in the next few minutes. Lisa Mendez, who was a waitress at the bar and had been invited to join appellant's group for the night's festivities, testified that when Ramirez and Soto began arguing, appellant took his gun out and "asked if something was happening." She said he was the first person to take out a gun. She said Ramirez was pushed to the floor by Soto, at which point appellant rose, cocked his pistol, and "put it on his [Soto's] forehead." She said she heard a shot, then others, but did not see who fired any of the shots. After the shooting, Mendez heard appellant ask the

---

1. Appellant did not intend to waive the issue altogether, as he expressed a desire to prove the issue via a habeas corpus proceeding at a later date, if necessary.

victim, "What is it you that you want? That's what you wanted, you . . . son of a bitch." She had not seen anyone else with a pistol. She said she was absolutely sure the first gunshot came from appellant's gun.

Castillo also testified that, as Soto and Ramirez began to argue, appellant rose up from the table, pulled out his gun from around his waist, cocked it, and put it close to Soto's head. She said appellant's gun fired as Soto tried to push it away. She said that Ramirez then took out his gun and fired at Soto. She said that after Soto was shot, he grabbed one of appellant's hands as he fell to the floor. Castillo saw both appellant and Ramirez shoot at Soto as he lay on the floor. She said Soto was lying near her feet as he was shot. She later saw appellant and Ramirez at the King's Palace bar and noticed they had changed clothes. Castillo said appellant and Ramirez proceeded to tell an acquaintance there that they had just killed someone at the Roman Inn.

Another witness, Marisol de Leon, was also present at the Roman Inn that night with appellant's group. She had dated appellant on occasion. She admitted she had been drinking a lot that evening, but recalled seeing Ramirez push Soto to the ground. She said appellant took his gun out first and fired two shots at the ceiling. She saw Ramirez shoot the victim once in the chest and once in the head. She left the scene with appellant and Ramirez. They went to Ramirez's house and the men changed clothes, then went to the King's Palace.

Quintanilla testified that she was at the table with appellant on the evening of the murder. She had been dating appellant for several weeks at that time. She said she saw Ramirez and Soto argue, and appellant grabbed his gun and approached the melee. She said a crowd gathered around the men fighting, and appellant shot his gun into the air. She saw Ramirez shoot at Soto, but never saw appellant shoot the victim. She left the scene with appellant, Castillo, Ramirez and de Leon.

Quintanilla testified that they went to Ramirez's house, then to the King's Palace, then to the home of an acquaintance named Henry. By 6:00 a.m., Quintanilla and appellant went to his house, but were told that police had been looking for him there. They drove towards Ramirez's house but noticed a police car following them. Appellant sped up his vehicle, then stopped it at an alleyway and fled on foot. Quintanilla recalled him having a black gun at the time.

McAllen police officers David Ramos and Santiago Galvan testified that they pursued appellant on foot in the alleyway. While pursuing appellant, each officer testified that appellant pointed his gun towards them. Ramos eventually arrested appellant. After appellant was handcuffed, Ramos testified that they found the .380 caliber Llama pistol appellant had been carrying laying nearby.

Another McAllen police officer, John Lara, testified that he read appellant his *Miranda* rights when he was brought to the police station on the morning of May 17, 1992. Appellant gave a statement, which Lara transcribed, then read to the jury at trial, the substance of which is summarized below:

Appellant saw Soto push Ramirez. Appellant got up and took out his gun and pointed at Soto while walking towards the victim. Soto grabbed his arm and the gun went off while they struggled. Appellant "felt it strike him [Soto] because he went limp." Ramirez then fired his gun. As Soto fell to the ground, appellant's arm "swung back down towards him" and his gun "went off again." He thought he may have hit Soto on the shoulder at that time. He saw Ramirez fire at the victim again as he lay on the floor.

After going to the King's Palace, he went to his house and was told the police were looking for him. He drove towards Ramirez's house and noticed police following him. He sped up to avoid them because he did not want to get stopped while still in possession of his gun. He stopped the car, began to run, and removed the gun from his waistband to throw it away. After hearing shots fired, appellant fell to the ground, where he was arrested by the officers pursuing him. Appellant also admitted that the gun he was caught with "was the same one I used against the guy."

The State also presented the testimony of Officer Guadalupe Cavazos, who investigated

the crime scene. Cavazos testified that he recovered a couple of spent .38 caliber casings, lead fragments, some teeth, and some cigarettes. He said the officers recovered a discarded .380 handgun near the place where appellant was arrested later in the evening. Ronald Richardson, supervisor of the firearm section of the crime laboratory for the Texas Department of Transportation, testified that the casings found at the scene of the shooting were from a .380 caliber Winchester Western. He could not determine the caliber of several of the bullet fragments recovered from the victim's body, however.

■ Although there were some minor discrepancies in the testimony, it was the prerogative of the jury to decide which witnesses were credible. *Janecka v. State,* 937 S.W.2d 456, 461 (Tex.Crim.App.1996). Based on the testimony of the eyewitnesses, as well as appellant's own statement to police, wherein he admitted shooting his weapon and stated his belief that he shot the victim, we find the evidence sufficient to convict appellant of murder. Whether appellant was the principal actor or a party to the offense, the evidence demonstrated that he was a willful and active participant in Soto's murder. Point of error three is overruled.

■ By his fourth and fifth points, appellant contends that the evidence did not prove beyond a reasonable doubt that appellant intentionally or knowingly threatened police officers David Ramos and Santiago Galvan with a deadly weapon while they were in the line of duty. Appellant contends that, although he exhibited a gun while the officers were pursuing him, there was no testimony that he actually threatened to use the gun, or that he ever cocked the weapon in preparation for use. He contends that he took his gun out "to try to get away from" the officers, rather than as a threat to them. Moreover, he contends that he could not have pointed the weapon at both officers at the same time.

According to the Penal Code, a person commits assault "if the person ... intentionally or knowingly threatens another with imminent bodily injury." TEX.PENAL CODE ANN. § 22.01(a) (Vernon 1994). A person commits the offense of aggravated assault if, in the course of committing assault as described in section 22.01, the person "uses or exhibits a deadly weapon during the commission of the assault." TEX.PENAL CODE ANN. § 22.02 (Vernon 1994). An offense under this section is a felony of the first degree if the offense is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant." *Id.* Moreover, the actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. *Id.*

■ Contrary to appellant's assertion, the act of pointing a loaded gun at an officer in pursuit is, by itself, threatening conduct which supports conviction for aggravated assault. *Preston v. State,* 675 S.W.2d 598, 601 (Tex.App.—Dallas 1984, pet. ref'd), *cert. denied,* 474 U.S. 982, 106 S.Ct. 389, 88 L.Ed.2d 341 (1985). Proof of verbal threats is unnecessary. *Id.*

Both Galvan and Ramos testified at trial that, while they were pursuing appellant in an attempt to make an arrest, appellant brandished a pistol at them. Ramos testified that appellant pointed the pistol at him while he chased appellant. Galvan also testified that, during the course of his pursuit, appellant had pointed a pistol at him. Both officers testified that they were concerned appellant would shoot them. Appellant admitted in his written statement that he knew the men pursuing him were police officers. This evidence was sufficient to establish the necessary elements of aggravated assault. Points four and five are overruled.

The judgments of the trial court are AFFIRMED.