TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00635-CR







Tracey Lee Hersha, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 48,777, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING








 Appellant Tracey Lee Hersha appeals his conviction for the offense of aggravated
assault on a public servant. See Tex. Penal Code Ann. § 22.02(a)(2), (b)(2) (West 1994). The
jury assessed his punishment at twenty-five years' imprisonment. In this appeal, appellant
challenges the factual sufficiency of the evidence to support his conviction. We will affirm the
trial-court judgment. 


FACTUAL BACKGROUND


 On March 20, 1998, Donna Barber returned to her trailer home to find appellant,
who was then living with her, asleep on the couch. She saw a bottle of vodka on the kitchen
counter and some pain pills on the table next to him. During an ensuing argument with appellant,
Barber ordered him to move out of her home. Appellant became more upset, grabbed a
crossbow, (1) and threatened to shoot himself in the chest with it. (2) Alarmed by appellant's behavior,
Barber drove to a liquor store and called the police to report that Hersha was contemplating
suicide. She remained at the store until the police told her it was safe to return home. 

 Police officers James Strunk and Jerry Bryan responded to Barber's call. They
were the only two witnesses at the trial who testified to the events that followed. Officers Strunk
and Bryan arrived in uniform at Barber's trailer in a clearly marked police vehicle. As they
arrived, they saw appellant in the yard holding a large knife. Appellant then retreated into the
trailer through a sliding glass door and wedged a wooden board in the door jamb to lock the door
behind him. The officers approached the house intending to try to help appellant. They split up
and positioned themselves on opposite corners in order to cover all four sides of the trailer. 

 Officer Bryan testified that as he went around the trailer, he saw appellant come out
the back door with a crossbow in his hand. Appearing surprised to see the officer, appellant
pulled the bow up to shoulder level and pointed it at Bryan. Bryan testified that at that point, he
thought appellant was going to shoot him. Although he had his pistol drawn, Bryan did not use
it to defend himself because he thought Officer Strunk might come around the trailer directly into
his line of fire. Consequently, he felt he had no choice but to seek cover behind a tree.

 Appellant then moved back into the trailer and slammed the door. During this time,
Strunk had come around the house and seen Bryan with his pistol drawn. When Bryan moved for
cover, Strunk returned to his original position on the front side of the house, where he saw
appellant through the trailer door with the crossbow raised and pointed. Strunk remembered
seeing a bolt loaded in the bow. The officers then spoke with appellant who remained inside the
trailer. Bryan testified that appellant told him that either the officers were going to have to kill
him, or he would have to kill them, and if they wanted to "get" him, they could come in and get
him. Eventually, the officers convinced appellant to come out of the trailer. At the officers'
request, appellant threw out the crossbow and two knives and emerged from the trailer, at which
point he was taken into custody. Both officers testified that when the crossbow hit the ground,
the bolt discharged and flew into the surrounding trees. The police never recovered the discharged
bolt.

 In his sole point of error, appellant claims that there is insufficient evidence to
support the jury verdict of guilty, arguing that the jury made an assumption of facts which were
not in evidence.


FACTUAL SUFFICIENCY OF THE EVIDENCE


 Appellant does not challenge the legal sufficiency of the evidence. A factual
sufficiency review begins with the presumption that the evidence supporting the jury's verdict was
legally sufficient. See Clewis v. State, 922 S.W.2d 129, 134 (Tex. Crim. App. 1996). In a
factual sufficiency analysis, the appellate court determines whether the jury verdict is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Id. at 129 (citing 
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed)). The
appellate court compares the evidence weighed by the jury that proves the existence of the
elemental fact in dispute to the evidence that tends to disprove the fact in dispute, considering the
evidence as a whole rather than in the light most favorable to either party. See Cain v. State, 958
S.W.2d 404, 408 (Tex. Crim. App. 1997); Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim.
App. 1997). However, the appellate court's review must be appropriately deferential so as to
avoid the court's substituting its own judgment for that of the jury. See Clewis, 922 S.W.2d at
133. Moreover, the possibility that reasonable minds could differ over the conclusions to be
drawn from the evidence does not allow the appellate court to reverse the verdict. See Richardson
v. State, 973 S.W.2d 384, 387 (Tex. App.--Dallas 1998, no pet.).

 Appellant argues that the jury made assumptions of facts that were not in evidence;
he claims the jury assumed that he intended to harm Officer Bryan because he raised the crossbow
when he stepped out of the home. 

 Section 22.01 of the Texas Penal Code provides in relevant part:


(a) A person commits an offense if the person:


 (2) intentionally or knowingly threatens another with imminent bodily
injury.



 Section 22.02 provides in relevant part:


(a) A person commits an offense if the person commits assault as defined in
Section 22.01 and the person:


 (2) uses or exhibits a deadly weapon (3) during the commission of the assault.


(b) An offense under this section is a felony of the second degree, except that the
offense is a felony of the first degree if the offense is committed:


 (2) against a person the actor knows is a public servant while the public
servant is lawfully discharging an official duty, or in retaliation or on
account of an exercise of official power or performance of an official
duty as a public servant.



Tex. Penal Code Ann. §§ 22.01(a), 22.02(a), (b) (West 1994).

 Appellant contends that intent to harm is a necessary element of the offense of
aggravated assault, and that the mere raising of the crossbow is not suggestive of his intent to harm
Officer Bryan. The State argues that intent to harm is not an element of the offense; appellant
needed only to intentionally or knowingly engage in the act of threatening the officer. Appellant
cites Peterson v. State, 836 S.W.2d 760 (Tex. App.--El Paso 1992, pet. ref'd), as holding that
an aggravated assault on a peace officer under section 22.02(a)(2)(A) is a "result" type offense as
opposed to a conduct offense, and therefore, he must have had the requisite intent to cause the
resulting harm to the officer. See id. at 765. However, in addition to the fact that the appellant
in Peterson was charged with actually assaulting a peace officer, Peterson was charged under the
pre-1994 version of section 22.02(a)(2) of the Penal Code, which was substantively different from
the section of the current Penal Code under which appellant was charged in this case. The phrase
"causes bodily injury" appeared in section 22.02(a)(2) of the Code before it was amended to take
effect in 1994. See Act of Sept. 1, 1987, 70th Leg., R.S., ch. 1001, § 12, 1987 Tex. Gen. Laws
3750, 3764 (Tex. Penal Code Ann. § 22.02, since amended). Moreover, the Peterson court noted
that threatening a peace officer with a deadly weapon is a conduct offense and does not require the
result or intent to cause a result to satisfy the offense of aggravated assault. See Peterson, 836
S.W.2d at 765.

 The essential inquiry here is whether pointing a deadly weapon is itself a sufficient
threat to support a conviction for assault as defined under section 22.01(a)(2). Appellant argues
that some other act, word, or deed must be present in addition to the raising and pointing of the
crossbow to manifest assaultive behavior. It is well established that threats can be conveyed by
action or conduct as well as words. See Horn v. State, 647 S.W.2d 283, 284 (Tex. Crim. App.
1983). The mere display and pointing of a gun in the victim's general direction has been held to
constitute a threat of imminent bodily injury. See May v. State, 660 S.W.2d 888, 889 (Tex.
App.--Austin 1983), aff'd, 722 S.W.2d 699 (Tex. Crim. App. 1984); see also Rodriguez v. State,
955 S.W.2d 171, 174 (Tex. App.--Amarillo 1997, no pet.); De Leon v. State, 865 S.W.2d 139,
142 (Tex. App.--Corpus Christi 1993, no pet.). Aggravated assault requires only "that the
defendant be using a deadly weapon to intentionally or knowingly threaten another with imminent
bodily injury." Gaston v. State, 672 S.W.2d 819, 821 (Tex. App.--Dallas 1983, no pet.).

 Officer Bryan testified at trial that when appellant pointed the crossbow at him, he
thought appellant was going to shoot him and he was afraid of getting hurt. He testified further
that the only reason he did not use his own weapon in self-defense at that point was to avoid
accidentally shooting Officer Strunk. Similar testimony by police officers in other cases has been
held sufficient to establish the elements of aggravated assault on a police officer. In Cantu v.
State, 953 S.W.2d 772 (Tex. App.--Corpus Christi 1997, pet. ref'd), the court held the act of
pointing a loaded gun at two pursuing police officers to be sufficiently threatening to support a
conviction for aggravated assault. See id. at 775. Cantu claimed that he never intended to
threaten the officers, but rather took his gun out "to try to get away from the officers." Id.
However, both officers testified at trial that they were concerned Cantu would shoot them. See
id. In this case, Hersha's act of pointing the crossbow had the same effect on Officer Bryan and
constituted a threat of imminent bodily injury.

 According to Officer Bryan, appellant threatened the officers from inside the trailer
after he encountered Officer Bryan in the backyard. Appellant told the officers that either they
were going to have to kill him, or he would have to kill them. While appellant argues that this 
exchange reveals his true suicidal intent--that he wanted the officers to shoot him--the State
responds that intent to harm is not an element of the offense, and that appellant's verbal threat
supports the inference that he intended to threaten Officer Bryan with the crossbow. However,
we need not resolve this dispute because appellant's act of pointing the crossbow at Officer Bryan
constitutes evidence of a sufficient threat to support a conviction for aggravated assault. We
therefore reserve the question of whether appellant's subsequent verbal exchange with the officers
could be considered evidence that appellant intended to threaten Officer Bryan with the crossbow. 
Appellant's sole point of error is overruled.


CONCLUSION


 Adhering to the well-defined standard of review and giving due deference to the
jury determination that the officers' testimony was credible, we hold that the verdict in this case
was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.
Accordingly, the judgment is affirmed.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: June 10, 1999

Do Not Publish
1. The crossbow had been given to Barber's seven year-old son by her ex-husband. 
2. Barber contradicted herself on direct examination. She testified that she saw the crossbow
loaded with a bolt before she left the trailer to seek help, but when asked later on direct
examination, she testified that the bow was not loaded. 
3. "Deadly weapon" is defined in the Texas Penal Code as "a firearm or anything manifestly
designed, made, or adapted for the purpose of inflicting death or serious bodily injury." See Tex.
Penal Code Ann. § 1.07(a)(17)(A) (West 1994). Appellant does not raise the issue of whether a
crossbow falls under this definition of "deadly weapon." However, a crossbow and a firearm are
similar in operation, as each discharges an object that can cause serious bodily injury or death. 
Thus, a crossbow fits the classification of deadly weapon, because it is precisely the kind of object
"manifestly designed, made, or adapted" to cause serious bodily injury. At trial, Officer Strunk
testified from personal experience with a crossbow similar to the one wielded in this case, that in
his opinion, "a crossbow is a deadly weapon." 



ton v. State, 672 S.W.2d 819, 821 (Tex. App.--Dallas 1983, no pet.).

 Officer Bryan testified at trial that when appellant pointed the crossbow at him, he
thought appellant was going to shoot him and he was afraid of getting hurt. He testified further
that the only reason he did not use his own weapon in self-defense at that point was to avoid
accidentally shooting Officer Strunk. Similar testimony by police officers in other cases has been
held sufficient to establish the elements of aggravated assault on a police officer. In Cantu v.
State, 953 S.W.2d 772 (Tex. App.--Corpus Christi 1997, pet. ref'd), the court held the act of
pointing a loaded gun at two pursuing police officers to be sufficiently threatening to support a
conviction for aggravated assault. See id. at 775. Cantu claimed that he never intended to
threaten the officers, but rather took his gun out "to try to get away from the officers." Id.
However, both officers testified at trial that they were concerned Cantu would shoot them. See
id. In this case, Hersha's act of pointing the crossbow had the same effect on Officer Bryan and
constituted a threat of imminent bodily injury.

 According to Officer Bryan, appellant threatened the officers from inside the trailer
after he encountered Officer Bryan in the backyard. Appellant told the officers that either they
were going to have to kill him, or he would have to kill them. While appellant argues that this 
exchange reveals his true suicidal intent--that he wanted the officers to shoot him--the State
responds that intent to harm is not an element of the offense, and that appellant's verbal threat
supports the inference that he intended to threaten Officer Bryan with the crossbow. However,
we need not resolve this dispute because appellant's act of pointing the crossbow at Officer Bryan
constitutes evidence of a sufficient threat to support a conviction for aggravated assault. We
therefore reserve the question of whether appellant's subsequent verbal exchange with the officers
could be considered evidence that appellant intended to threaten Officer Bryan with the crossbow. 
Appellant's sole point of error is overruled.