

# NUMBER 13-17-00005-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JHERYL RAY MANCILLAS,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## On appeal from the 105th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

## Before Justices Contreras, Longoria, and Hinojosa
## Memorandum Opinion by Justice Hinojosa

Appellant Jheryl Ray Mancillas appeals his convictions for three counts of aggravated assault against a public servant, a first-degree felony, *see* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(B) (West, Westlaw through 2017 1st C.S.), and one count of unlawful possession of a firearm, a third-degree felony. *See id.* § 46.04(a)(1), (e) (West,

Westlaw through 2017 1st C.S.). The jury returned a guilty verdict and assessed punishment at twenty-five years' imprisonment for the aggravated assault counts, and five years' imprisonment for unlawful possession of a firearm, with each sentence to be served concurrently. In two issues,[1] Mancillas complains that (1) his convictions are supported by legally insufficient evidence; and (2) the trial court erred in denying his motion to sever the offense of unlawful possession of a firearm. We affirm.

## I. BACKGROUND

Mancillas was charged by indictment with three counts of committing aggravated assault with a deadly weapon against three police officers and one count of unlawful possession of a firearm. *See id.* §§ 22.02 (b)(2)(B); 46.04 (a)(1). On the count of unlawful possession of a firearm, the indictment stated that Mancillas was previously convicted of the felony offense of possessing a prohibited substance or item in a correctional facility. *See id.* § 38.11 (West, Westlaw through 2017 1st C.S.). The trial court denied Mancillas's motion to sever the unlawful possession of a firearm count.

Melisa Soliz, Mancillas's mother, testified that he suffered from schizophrenia and bipolar disorder. According to Soliz, Mancillas's mental health was deteriorating due to the loss of Mancillas's grandmother, discontinuation of his schizophrenia and bipolar medications, and the use of synthetic marijuana. Soliz testified that Mancillas was speaking to his grandmother as if she were still alive, talking to himself, and threatening

---

[1] Mancillas identifies as a separate issue that he was "wrongfully charged with an aggravated assault simply because he was alleged to exhibit a deadly weapon in the presence of a peace officer." However, this issue is not developed separately in the argument section of his brief, and it is not supported by authority. Therefore, the issue is waived as it is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Nevertheless, we will address the thrust of his argument to the extent it relates to his legal sufficiency challenge.

to shoot any police officer that came to his house. As a result, Soliz obtained a mental health detention warrant from Nueces County Justice of the Peace Robert Balderas. Judge Balderas instructed Soliz call the police to execute the detention warrant.

After a 911 call, officers Robert Dorsch, Douglas May, and Adam Villarreal from the Corpus Christi Police Department (CCPD) met Soliz at a restaurant down the street from Mancillas's residence. Soliz spoke with Officer Dorsch and informed him of Mancillas's psychological problems. She also warned him that Mancillas might have a gun. Soliz gave Officer Dorsch a key to the residence and explained where Mancillas's room was located.

Officer Dorsch testified that he and the other officers went to Mancillas's house to serve the mental health detention warrant. When they entered the residence, Officer Dorsch saw Mancillas retreat down a hallway into a bedroom. Officer Dorsch approached the room and began negotiating with him to "open up his door and come out." Officer Dorsch was the main speaker throughout the negotiation process. During this time, Mancillas stated that he possessed a gun. Officer Dorsch convinced Mancillas to place the gun in the closet. After over an hour passed, Officer Dorsch gained entry to the room. He instructed Mancillas to remove his hand from his pocket. When Mancillas removed his hand, Officer Dorsch saw that he was holding a gun, which he pointed at Officer Dorsch and the other two officers. Officer Dorsch characterized Mancillas's actions as "fanning" the gun, "like he didn't know who to shoot it at." He then heard a loud popping sound which caused him and the two other officers to fire their weapons at Mancillas, striking him in his hand, elbow, and stomach. Officer Dorsch and the other

3

officers then administered first aid to the injured Mancillas.

Officer May testified that he was in a bathroom across the hall from Officer Dorsch and Mancillas. Officer May heard Officer Dorsch state, "Don't do it. Don't do it. Don't do it." He then entered the room where he saw Mancillas with a gun "up in the air, pointing at" Officers Dorsch and Villarreal. Officer May heard gunfire, and he responded by shooting Mancillas with his rifle. Officer May later recovered Mancillas's gun and removed it from the area.

Officer Villarreal testified that he was located in a bedroom across the hallway from Officer Dorsch and Mancillas. After Officer Dorsch entered Mancillas's room, Officer Villareal heard him say, "Let me see your hands." Officer Villarreal then entered the room and observed Mancillas holding a small caliber pistol. Mancillas then took a "bladed stance," while bringing the gun up. Officer Villarreal responded by firing his weapon at Mancillas, who fell on the bed. Officer Villarreal saw that Mancillas was bleeding and placed a tourniquet on his arm. He also applied pressure with a bandage to another wound.

Cara Shrader, a CCPD crime scene investigator, examined the firearm recovered from the residence. She testified that there was a live round with a "strike mark" in the chamber of the gun. She explained, "when you shoot it, the fire pin will strike the back of the cartridge, which becomes a casing, and it leaves a primer mark on it, indicating that it has been shot[.]" She believed this indicated "a misfire or the gun . . . goes wonky and just doesn't shoot[.]"

David Curtiss, a CCPD firearms examiner, identified Mancillas's gun as a Taurus

4

.22 caliber semi-automatic pistol. Curtiss stated that a live round was found in the chamber of the weapon and that the round had "a slight firing pin impression made right across the headstamp." When asked why the round was not fired, Curtiss answered as follows:

> The firearm could have malfunctioned. The ammunition could have been defective. There could have been something that was blocking the firing pin from striking the breached face of the cartridge. Those are the only three reasons that I can think of[.]

During both opening and closing statements, Mancillas, through his attorney, conceded that he unlawfully possessed a firearm. Further, the State presented evidence that Mancillas could not possess a firearm due to a prior conviction for the offense of possessing a prohibited substance or item in a correctional facility. The jury found Mancillas guilty on all counts. This appeal followed.

## II. LEGAL SUFFICIENCY

By his first issue, Mancillas challenges the legal sufficiency of the evidence supporting his convictions for aggravated assault.[2]

### A. Standard of Review and Applicable Law

When examining the legal sufficiency of the evidence, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, any rational trier of fact could have found each element of the offense beyond a reasonable

---

[2] Mancillas presents no argument concerning the sufficiency of the evidence supporting his conviction for unlawful possession of a firearm. Therefore we will not address this contention. *See id.* Further, Mancillas purports to challenge both the legal and factual sufficiency of the evidence. However, the Texas Court of Criminal Appeals has abolished factual sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011) (citing *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op.)). Therefore, we will address only Mancillas's legal sufficiency challenge.

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). In doing so, we give deference to the responsibility of the jury as factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from facts. *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (internal quotation marks omitted).

A person commits an assault if the person "intentionally or knowingly threatens another with imminent bodily injury[.]" TEX. PENAL CODE ANN. § 22.01(a)(2) (West, Westlaw through 2017 1st C.S.). The Texas Penal Code defines "bodily injury" to mean "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West, Westlaw through 2017 1st C.S.). It is well settled that a threat may be communicated by action, conduct, or words. *See McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984); *Jones v. State*, 500 S.W.3d 106, 113 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "[T]here must be some evidence of a threat being made to sustain a conviction of assault by threat." *Olivas v. State*, 203 S.W.3d 341, 349 (Tex. Crim. App. 2006). The

6

crucial inquiry is "whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Id.* at 347.

An assault is elevated to an aggravated assault if the person "uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). A firearm is a deadly weapon per se. *See id.* § 1.07(a)(17)(A) (West, Westlaw through 2017 1st C.S.); *Williams v. State*, 502 S.W.3d 262, 270 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). An aggravated assault is a first-degree felony if it is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty[.]" TEX. PENAL CODE ANN. § 22.02(b)(2)(B).

## B.    Analysis

Mancillas argues that "[b]y only pointing a gun, at most [he] should have been charged and/or convicted of Assault against a Peace Officer[.]" Mancillas maintains that "[i]n order for [him] to be convicted of Aggravated Assault, the [S]tate would have to prove that [he] pointed his gun and fired shots." Accordingly, he argues the evidence is legally insufficient because "the prosecution presented no evidence that [Mancillas] fired any shots." We disagree.

Texas courts, including this one, have consistently held that the act of pointing a loaded gun at an individual is, by itself, threatening conduct which supports a conviction for aggravated assault. *See Jones*, 500 S.W.3d at 113; *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd); *Sosa v. State*, 177 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Cantu v. State*, 953 S.W.2d 772, 775 (Tex.

7

App.—Corpus Christi 1997, pet. ref'd); *Rodriguez v. State*, 955 S.W.2d 171, 174 (Tex. App.—Amarillo 1997, no pet.); *Preston v. State*, 675 S.W.2d 598, 601 (Tex. App.—Dallas 1984, pet. ref'd). The evidence viewed in the light most favorable to the verdict establishes that Mancillas pointed a loaded firearm at the responding officers. One officer described Mancillas's actions as "fanning" the gun, "like he didn't know who to shoot it at." Officer Dorsch described hearing a popping sound, which is consistent with other evidence that Mancillas's gun misfired. A rational jury could have concluded from this evidence that Mancillas "acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Olivas*, 203 S.W.3d at 347; *see* TEX. PENAL CODE ANN. § 22.01(a)(2). Mancillas's use of a per se deadly weapon—a firearm—during the assault elevates the offense to an aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). And it is undisputed that the aggravated assault was committed against public servants lawfully disgorging official duties. *See id.* § 22.02(b)(2)(B).

We conclude that the evidence is legally sufficient to support Mancillas's convictions for aggravated assault of a public servant. *See Jackson*, 443 U.S. at 319; *Ramsey*, 473 S.W.3d at 808. We overrule Mancillas's first issue.

### III. SEVERANCE

By his second issue, Mancillas argues that the trial court erred in denying his motion to sever the unlawful possession of a firearm offense.

### A. Standard of Review and Applicable Law

Section 3.04 of the penal code allows a defendant to obtain a severance of most

8

criminal charges that have been consolidated for trial under section 3.02.  *See* T<small>EX</small>.
P<small>ENAL</small> C<small>ODE</small> A<small>NN</small>. §§ 3.02, 3.04 (West, Westlaw through 2017 1st C.S.).  Unless the
charges fall into one of the statutory exceptions, none of which are relevant here, the
defendant's right to a severance is "absolute" and the trial judge has no discretion to deny
the motion.  *Werner v. State*, 412 S.W.3d 542, 546–47 (Tex. Crim. App. 2013).  This
rule reflects two concerns: that the jury will convict a defendant because of his prior or
subsequent misdeeds, or that the jury will infer that because the accused committed other
crimes, he probably committed the charged offense.  *Id.* at 547.

If the trial court erroneously denied a motion to sever, we review the record for
harm under the Rule 44.2(b) standard for non-constitutional error.  *Id.*  Under this
standard, appellate courts must disregard the error unless it affected the appellant's
substantial rights.  T<small>EX</small>. R. A<small>PP</small>. P. 44.2(b); *Werner*, 412 S.W.3d at 547.  Neither party
has the burden to demonstrate harm; "instead, we assess harm after reviewing the
entirety of the record, including the evidence, jury charge, closing arguments, voir dire,
and any other relevant information."  *Id.* (citing *Schultz v. State*, 63 S.W.3d 442, 444–45
(Tex. Crim. App. 2001)).  We will not overturn a criminal conviction for non-constitutional
error if, after examining the record as a whole, we have fair assurance the error did not
influence the jury, or influenced the jury only slightly.  *Barshaw v. State*, 342 S.W.3d 91,
93 (Tex. Crim. App. 2011).

In determining harm resulting from the failure to sever offenses, the overlap of
evidence is the most important factor.  *Werner*, 412 S.W.3d at 549.  When there is no
overlap of evidence between the two charges, the error is most likely to be harmful.  *Id.*

9

at 548. When there is a substantial overlap of evidence between the two charges, the failure to sever is most likely to be harmless. *Id.* at 548–49. In other words, the State should not be permitted to try "an 'apples' offense along with an unrelated 'oranges' offense in the hope that the jury [will] find the defendant guilty of being a generally bad sort." *Id.* at 548. Another relevant factor to take into consideration is whether the defendant's trial strategy would have been different if the severance was granted. *See id.* at 548 n.35; *Scott v. State*, 235 S.W.3d 255, 261 (Tex. Crim. App. 2007).

## B.     Analysis

We agree with Mancillas that the trial court erred when it denied his request to sever the offense of unlawful possession of a firearm by a felon. Mancillas made a timely request which apprised the court that he wished to invoke his right to a severance, and it was error for the trial court to deny it. *See Werner*, 412 S.W.3d at 546.

Having found error, we begin our harm analysis by assessing the extent that the evidence supporting the charges overlapped. *See id.* at 547 (describing the overlap of evidence as "the most important factor" in this analysis). The charges arose from the same criminal transaction, and each count required proof that Mancillas was in possession of a firearm. Therefore, this is not a case where there was no overlap between the charges. However, to prove unlawful possession of a firearm, the State was required to present evidence of Mancillas's prior felony conviction.[3] To meet its

---

[3] A person who has been convicted of a felony commits an offense if he possesses a firearm "after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later[.]"  TEX. PENAL CODE ANN. § 46.04(a)(1) (West, Westlaw through 2017 1st C.S.).

10

burden, the State presented evidence that Mancillas was previously convicted of a felony offense under penal code section 38.11, entitled "Prohibited Substances and Items in Correctional Facility." *See* Tex. Penal Code Ann. § 38.11. Had this count been severed, the jury hearing the aggravated assault counts would not have heard evidence of Mancillas's prior conviction. We note, however, that very little of the trial was devoted to Mancillas's prior conviction. The trial court admitted the judgment into evidence. But other than a fleeting reference during closing argument, the State presented no further evidence or testimony concerning the details and existence of the prior conviction. There is nothing in the record to suggest that the jury convicted appellant of aggravated assault simply because he was a "bad sort." *Cf. Llamas v. State*, 12 S.W.3d 469, 471–72 (Tex. Crim. App. 2000) (concluding that appellant suffered reversible harm from trial court's failure to sever drug charge from unrelated motor-vehicle charge because, among other factors, the jury expressed concerns that evidence relating to the drug charge would color their inquiry into the defendant's guilt for the motor-vehicle charge).

Further, Mancillas does not argue that his defensive strategy might have been different had the charges been severed. *See Werner*, 412 S.W.3d at 548 n.35 (considering lack of evidence regarding defensive strategy in considering whether appellant had shown harm in denial of severance). Finally, we observe that the evidence of Mancillas's guilt on the aggravated assault counts was overwhelming. *See id.* at 549–51 ("Overwhelming evidence of guilt is a relevant factor in any Rule 44.2(b) harm analysis[.]"). As set out in our review of the sufficiency of the evidence, the State presented evidence, including corroborating testimony from three officers, establishing

11

that Mancillas pointed a loaded gun at the officers and attempted to fire the weapon. There was no evidence presented contradicting the officers' account.

This case does not present a scenario where an "apples" offense was tried along with an unrelated "oranges" offense. *See id.* at 548. Having examined the record, we have fair assurance that the error did not influence the jury, or influenced the jury only slightly. *See Barshaw*, 342 S.W.3d at 93. Accordingly, we conclude that the error was harmless. We overrule Mancillas's second issue.

## IV. Conclusion

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
19th day of July, 2018.