

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

## No. 02-22-00194-CR

———————————————————

JAMIE FUENTEZ RAMIREZ, Appellant

V.

THE STATE OF TEXAS

———

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1704962R

———

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

Appellant Jamie Fuentez Ramirez was convicted of six counts of aggravated assault on a public servant (while using a deadly weapon), one count of unlawful possession of a firearm, and one count of evading arrest. Ramirez received concurrent sentences of twenty years in prison for the aggravated-assault counts, eight years for the unlawful-firearm-possession count, and two years for the evading arrest count. Ramirez now appeals, claiming that (1) the punishment charge improperly instructed the jury that he was eligible to receive good-conduct time credit in prison and (2) the evidence is insufficient to support his conviction for aggravated assault in count seven. We affirm.

## I. BACKGROUND

North Richland Hills police officer Aaron Dixson received a call to assist Watauga police with a welfare check on a man who was "possibly suicidal, possibly intoxicated, [and] possibly armed with a firearm." Officer Dixson spotted a man and a car matching the call's description at a Racetrac gas station. Officer Dixson identified the man as Ramirez.

Officer Dixson approached Ramirez as he was standing outside his pickup truck, uneasy on his feet. Ramirez was drinking out of a large beer bottle. Because Racetrac is a "licensed premises," Officer Dixson felt justified in detaining Ramirez

2

for unlawfully consuming alcohol.[1]  And because there had been reports that Ramirez might be armed, Officer Dixson pulled out his firearm and ordered Ramirez to display his hands.  Ramirez responded by quickly retreating into his truck.

Ramirez closed the door and started rummaging in the center console.  Two other North Richland Hills police officers arrived to provide backup for Officer Dixson.  Ramirez suddenly drove off.

A chase ensued, and eventually six police cars were following Ramirez.  Police used a tire-deflation device, which damaged the tires and slowed Ramirez's truck.  Ramirez continued driving on flat tires until he reached his aunt's house.  After he stopped, and while still in the truck, Ramirez held up and displayed a handgun to the officers who had gathered.

Among the officers at Ramirez's aunt's home were Officer Dixson, Officer Robert Rife, Officer Chris Lizak (and his police dog), Officer Joseph Campbell, Officer Matthew Boyd, Watauga Sergeant Marshall McGee, and Lieutenant John Richerson.  Also present was Officer Alex Hetler, who addressed Ramirez through a PA system and told him to get out of the truck so that they could "put a peaceful resolve to all this."  Ramirez was on the telephone with his aunt at the time; he told

---

[1]A person commits an offense if he consumes beer on the premises of a retail dealer licensed for off-premise consumption of alcohol.  Tex. Alco. Bev. Code Ann. § 101.72(a).

her, and she relayed to police, that "he was going to start shooting if [they] didn't stop yelling at him."

Ramirez got out of his truck and walked toward the house, but his angle of travel took him toward the officers who were behind cars parked on the street. The police ordered him to drop his gun, but he continued walking to a point where the officers' "cover was almost compromised." Three times, Officer Dixson fired a "bean-bag" shotgun at Ramirez, with two rounds hitting Ramirez along his beltline. Ramirez then raised and began firing his weapon. Video from Officer Dixson's dash camera indicates that Ramirez fired at least three shots. Several of the officers returned fire, and Ramirez was injured.

Ramirez was charged with seven counts of aggravated assault on a public servant with a deadly weapon, one count of unlawful possession of a firearm, and one count of evading arrest. The State waived one of the aggravated assault counts during trial, and a jury convicted Ramirez of the other counts.

## II. ERRONEOUS GOOD-CONDUCT-TIME INSTRUCTION

In his first point, Ramirez complains that the trial court's punishment charge erroneously informed the jury of the possibility that Ramirez could receive credit for "good-conduct time" while in prison. The State concedes that this part of the charge was in error, and we agree. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (mandating parole-related, punishment-stage instruction to give jury, but excluding any mention of good-conduct time); *Bailey v. State*, No. 02-22-00186-CR, 2023 WL

4

5766138, at *6 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op., not designated for publication) (holding that it was error to include similar good-conduct-time instruction); *Weaver v. State*, No. 02-21-00081-CR, 2022 WL 2978730, at *5 (Tex. App.—Fort Worth July 28, 2022, pet. ref'd) (mem. op., not designated for publication) (same). Ramirez did not object to this instruction at trial.

Having determined that there was unobjected-to error in the charge, we must conduct the appropriate harm analysis. Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The

5

purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

Looking at the punishment charge as a whole, we note first that the jury was instructed that no one could predict how parole laws and good-conduct time might be applied to Ramirez and that it was not to consider the extent to which good-conduct time and parole may be applied to Ramirez. The record does not indicate that the jury failed to deliberate and decide the case based on the instructions contained in the charge. *See Bailey*, 2023 WL 5766138, at *6; *Weaver*, 2022 WL 2978730, at *5. As in *Bailey* and *Weaver*, the jury here did not send any notes regarding parole, time credit for good conduct, or how those issues would affect Ramirez's punishment. *See Bailey*, 2023 WL 5766138, at *6; *Weaver*, 2022 WL 2978730, at *5.

Second, the state of the punishment evidence does not make it more likely that the good-conduct-time instruction harmed Ramirez. The jury had heard how Ramirez—who was afforded several opportunities to peacefully end the situation— got out of his truck, aimed a handgun at a group of police officers, and started firing. And though his sentences were not enhanced, the jury was presented with evidence that Ramirez had been convicted of, and served a five-year probated sentence for, felony driving while intoxicated before committing the charged offenses. The jury assessed sentences of twenty years' confinement for each of the aggravated-assault counts, eight years' for the unlawful-possession-of-a-firearm count, and two years' for the evading-arrest count. Except for the firearm-possession sentence, these

6

punishments are not near the maximum of the offenses' respective ranges.[2] Accordingly, it would not appear that the good-conduct-time instruction had an effect on the jury's evaluation of the punishment evidence.

Third, neither the State nor the defense alluded to good-conduct time during their arguments at punishment. This factor weighs against a finding of egregious harm. *See Weaver*, 2022 WL 2978730, at *6.

Finally, Ramirez argues that "his recognized diminished capacity was hotly contested" and speculates that the jury would have assessed a shorter prison term had the good-conduct-time instruction not appeared in the court's charge. But this speculation amounts to theoretical harm; it does not support a finding of the actual harm required for reversal. *See Almanza*, 686 S.W.2d at 174.

All of the factors in this case weigh against a conclusion that Ramirez suffered egregious harm. We overrule his first point.

## III. SUFFICIENCY—COUNT SEVEN

In his second point, Ramirez attacks the sufficiency of the evidence to sustain his conviction in count seven—specifically that the evidence is insufficient to show

---

[2]The punishment range for aggravated assault is confinement for five to ninety-nine years or life. Tex. Penal Code Ann. § 12.32(a) (range for first-degree felony), § 22.02(b)(2)(B) (aggravated assault where victim is public servant is first-degree felony). The range for both unlawful possession of a firearm and evading arrest is two to ten years. *Id.* § 12.34(a) (range for third-degree felony), § 38.04(b)(2)(A) (evading arrest with vehicle is third-degree felony), § 46.04(e) (unlawfully possessing firearm is third-degree felony)..

that he threatened Officer Boyd with imminent bodily injury. Because a rational juror could have determined beyond a reasonable doubt that Ramirez threatened Officer Boyd with imminent bodily injury, we overrule Ramirez's sufficiency point.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the

8

factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

A person commits the offense of assault if he "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code Ann. § 22.01(a)(2). A person commits aggravated assault if he "uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2). The offense is a first-degree felony if it is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." *Id.* § 22.02(b)(2)(B).

### B. SUFFICIENT PROOF OF AN IMMINENT THREAT

Ramirez complains that the State failed to prove that he "did then and there intentionally or knowingly threaten imminent bodily injury to M. Boyd, a public servant." Ramirez notes Officer Boyd's absence from trial and argues that, therefore, there is no evidence Ramirez threatened him personally. Contrary to Ramirez's implication, however, the Court of Criminal Appeals has not "define[d] assault by threat as requiring a [particular] victim's perception of the threat." *Olivas v. State*, 203 S.W.3d 341, 348 (Tex. Crim. App. 2006). The important question is "whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Id.* at 347.

Viewed in the light most favorable to the verdict, the evidence showed that Ramirez pulled a handgun, aimed it, and began firing in the direction of all the officers, including Officer Boyd. Specifically, Sergeant McGee testified that he was in

9

a group of officers that included Officer Boyd and that Ramirez was firing toward the officers on either side of him.[3]  He clarified that the gun was pointed at him and "everybody else," and he was convinced that one of the officers was going to be shot. *See Robinson v. State*, 596 S.W.2d 130, 133 n.7 (Tex. Crim. App. 1980) ("While it is true that the threat must be of imminent infliction of bodily injury or death, it is also true that the display of a deadly weapon of and within itself constitutes a threat of the required imminent harm."); *see also Cantu v. State*, 953 S.W.2d 772, 775 (Tex. App.— Corpus Christi–Edinburg 1997, pet. ref'd) (holding that pointing loaded gun at pursuing officer is threatening conduct supporting aggravated-assault conviction)

Further, although Officer Boyd did not testify, the jury could have inferred from the circumstances that Ramirez threatened him too, with imminent bodily injury. The other five officers at the scene all testified that they feared for their lives when the shooting began.  Given that Officer Boyd was in the middle of that same group, it was reasonable to conclude that the circumstances were such that they would portend an immediate threat to a person of reasonable sensibility in Officer Boyd's position. *See Olivas*, 203 S.W.3d at 347; *Sosa v. State*, 177 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that, even though victim did not testify, evidence was sufficient to support conviction for aggravated assault where defendant held gun,

---

[3]A diagram introduced at trial essentially placed Officer Boyd in the middle (though standing toward the rear of the group) of the six police officers at whom Ramirez fired his weapon.

10

demanded money, and walked in and out of bedroom where victim remained on the floor). We overrule Ramirez's second point.

## IV. CONCLUSION

Having overruled Ramirez's two points, we affirm the trial court's judgments.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 18, 2024